TROJANOWSKI, Administratrix, Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*March 16—April 11, 1916.*

*Railroads: Fences: Entry of adult upon right of way: Lack of fence at street crossing: Injury, when "occasioned" thereby: Liability: Statutes construed.*

1. A finding by the jury that the death of an adult who entered upon defendant's right of way at a street crossing and while walking along the railroad was struck and fatally injured by a passenger train was occasioned in whole or in part by the want of a wing fence on the line of the street, is *held* to be sustained by evidence showing, among other things, that in going upon the right of way the deceased used a well-beaten footpath which crossed the line on which a wing fence was required by sec. 1810, Stats.; that such path had for many years been used daily by large numbers of pedestrians; that defendant's agents and servants had full knowledge of such use and acquiesced therein; that no fence, guard, or other structure had been erected to divert this travel or give notice to the public to keep off the railroad; and that the deceased took the course which pedestrians usually followed in traveling along the tracks.

2. Under the circumstances stated the deceased was not a trespasser nor was his conduct in going upon and walking along the railroad such a deliberate, wanton, and reckless action that his death is to be considered as the result of a wilful exposure to known danger for which no recovery can be had.

3. Even if, in walking along the tracks, the deceased violated sec. 1811, Stats. 1911, that fact did not defeat the right to recover damages for his death, such right in cases within sec. 1810 being independent of the penal provision of sec. 1811.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

The action is for damages for the benefit of the widow of Felix Trojanowski, deceased, who was struck by one of defendant's trains and died from the injuries he sustained.

The decedent was fifty-seven years of age and a laborer by occupation and resided in the city of Milwaukee. He lived a short distance from where Fifteenth avenue intersects the defendant's right of way. Fifteenth avenue extends north and south and the railroad right of way crosses it in an easterly and westerly direction. Fifteenth avenue is carried over the right of way by an overhead bridge. The Forest Home cemetery fence borders on the west margin of the avenue. A well-defined footpath on the avenue near the cemetery fence extends from a point about two blocks north of the railway tracks to the right of way and then extends westerly on the right of way. The evidence shows that this path has been in existence for a period exceeding twenty years and has been in constant daily use by pedestrians, who traveled over the path and the railroad right of way to and from Fifteenth avenue and Twenty-second street to the west and the surrounding factories and business establishments. There are several factories in this district and this path was used by the factory employees, also by school children and by others traveling in that vicinity. Witnesses testify that a number of people, as high a number as 200, used this path on the right of way daily. The evidence of the railroad employees

and agents shows that it was well known to them and to defendant's representatives that this path existed and was used daily by hundreds of pedestrians. There was no wing fence nor cattle-guard or other barrier at this crossing to prevent or divert travelers from going onto and using the right of way as a footpath.

In February, 1913, intestate went upon defendant's right of way at this place and continued thereon in a westerly direction until he met a freight train coming from the east on the south track. Intestate then stepped to the north side of both tracks. The heavy smoke from the locomotive of the freight train seems to have obscured his view so that he did not see a passenger train coming from the west on the north track and he was struck and severely injured, which resulted in his death.

The court submitted a special verdict to a jury, who found (1) that the death of Felix Trojanowski was occasioned in whole or in part by the want of a wing fence at the west line of Fifteenth avenue where the same crosses the defendant's right of way, and (2) assessed the plaintiff's damages at the sum of $2,500. The court set aside the jury's answer to the first question and ordered judgment dismissing plaintiff's complaint. From such judgment this appeal is taken.

For the appellant there was a brief by *John C. Kleczka* and *Glicksman, Gold & Corrigan,* and oral argument by *Mr. Kleczka* and *Mr. Walter D. Corrigan.*

*Edward M. Smart,* for the respondent.

There was also a brief by *W. A. Hayes,* as *amicus curiæ.*

SIEBECKER, J. The plaintiff asserts that the defendant is liable for the damages she suffered by the death of Felix Trojanowski under the provisions of sec. 1810, Stats. 1911, providing for the erection and maintenance of fences and cattle-guards on railroads. Sub. 2 of this statute provides:

"Until such fences and cattle-guards shall be duly made

every railroad corporation owning or operating any such road shall be liable for all damages done to cattle, horses or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences or cattle-guards; . . ."

As appears by the foregoing statement, the jury found by special verdict that the death of Trojanowski was occasioned in whole or in part by the want of a wing fence at the west line of Fifteenth avenue where it crosses defendant's road. The trial court set aside this finding on the ground that the evidence does not permit of the inference "that there was some causal connection between absence of the fences and the death of plaintiff's intestate." The object and purpose of such fences and guards has been adverted to in the decisions of this court. *Blair v. M. & P. du C. R. Co.* 20 Wis. 254; *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639; *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189; *Atkinson v. C. & N. W. R. Co.* 119 Wis. 176, 96 N. W. 529. In the *Atkinson Case,* where claim was made for the loss of a horse, in speaking of this statute the court states:

"It is said by RYAN, C. J., in *Curry v. C. & N. W. R. Co.* 43 Wis. 676, that of course the open gate does not *cause* the injury to the horse; but the statute does not require this as a condition of the liability; merely that the result shall be occasioned by the absence of or defect in the fence, and that the injury from a train suffered by an animal which enters by means of such opening is occasioned thereby;" and further states that "The railway company is subjected to the duty of fencing not alone for the benefit of the adjoining owner but of the public at large."

In the *Schwind Case* it is said:

"The purpose of this statute was to cast upon the railroads absolute liability for injuries to cattle whose entry upon the tracks was made possible by absence of the prescribed fences, and when it was amended in the revision of 1878 by the addition 'persons,' *the extension of the same purpose to human beings was obvious.*"

This case also shows that proximate causal relation and contributory negligence are not involved in a case within this statute.

"An injury may well be occasioned in whole or in part by the absence of a fence, although it may not be proximately caused thereby. It is enough if such omission gives occasion for entry on the place of injury." *Randall v. M., St. P. & S. S. M. R. Co.* 162 Wis. 507, 156 N. W. 629.

In speaking of the object of the legislature in enacting this statute Mr. Justice Barnes in the *Ulicke Case* states:

"It has also recognized the shortcomings and propensities of the ordinary run of human beings and has provided an additional safeguard against their dangerous habit of walking along railroad tracks, by requiring that such tracks be fenced. . . . This statutory requirement is in the interest of preserving human life and limb and should not receive any interpretation that would tend to weaken it, unless it is apparent that such interpretation was clearly within the legislative contemplation."

The foregoing cases do not pass upon the claim of an adult person for injuries which were occasioned while traveling on a railroad where the entry was made over a place requiring a fence or a cattle-guard. The plaintiff in the case of *Alexander v. M., St. P. & S. S. M. R. Co.* 156 Wis. 477, 146 N. W. 510, drove onto the track under circumstances which showed that the team of horses he was driving entered the railway right of way either because he lost control of them or because of plaintiff's intoxicated condition, and hence he was held not to be guilty of such a deliberate and intentional entry on the railroad which in law constitutes such a wanton and reckless action that any injuries occasioned thereby are considered to be the result of a wilful exposure to a known danger for which the law affords no remedy. The question is, Does the conduct of the decedent in going onto the railroad and walking thereon, in the light of the facts and circum-

stances, show that he was guilty of such deliberate, wanton, and reckless action that the plaintiff is in law not entitled to recover the damages she suffered by decedent's death? The jury found that the death of the deceased was occasioned in some manner, in whole or in part, by the want of a wing fence at the west line of Fifteenth avenue where it crosses defendant's railroad. The trial court set this finding aside as not supported by the evidence, relying on *Bejma v. C. & M. E. R. Co.* 160 Wis. 527, 149 N. W. 588, 152 N. W. 180, and *Smith v. C. & N. W. R. Co.* 161 Wis. 560, 154 N. W. 623. In the *Bejma Case* the original entry by the plaintiff on the railroad at a place where the required fence was omitted was held not to have occasioned the second entry thereon at a different place where no fence was required, because it was obvious that he would have made the second entry regardless of the first and that Bejma's injuries were therefore wholly occasioned by the second entry on the railroad. The *Smith Case* turned on the point that the want of the required headlight on the approaching engine, which struck plaintiff while he was walking on the depot platform, had no causal connection with the collision, because the vicinity of the accident was so brilliantly lighted by electric lights that the required headlight would not have appreciably added to the illumination nor would it have aided plaintiff in observing the approaching engine.

The facts of this case show that the place of entry on the defendant's railroad at the crossing had been used by the public about twenty-nine years; that it was used daily by a large number of men, women, and children; that the number of such pedestrians was as high as two hundred and over on some days; that the defendant's agents and servants had full knowledge thereof and acquiesced therein; that there was a well-beaten footpath along the west side of Fifteenth avenue for over a block from the railroad which was daily used by the

pedestrians; that it passed over the fence line onto the track, and that no fence, guard, or other physical structure was erected or maintained by the railroad company to intercept or divert this travel from the railroad or give notice to the public to keep off from it. Under such circumstances it has been held in this and other courts that the pedestrians using the footpath on the railroad are not trespassers. *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, 11 N. W. 55; *Whalen v. C. & N. W. R. Co.* 75 Wis. 654, 44 N. W. 849; *Davis v. C. & N. W. R. Co.* 58 Wis. 646, 17 N. W. 406; *Delaney v. M. & St. P. R. Co.* 33 Wis. 67; *Johnson v. Lake Superior T. & T. Co.* 86 Wis. 64, 56 N. W. 161; *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 58 N. W. 79.

Considering the condition presented to the deceased at the time he approached the railroad in connection with the open way and the well-beaten traveled path and the constant use of it by the public generally, can it be said that his entry onto the railroad was not in part occasioned thereby? The maintenance of the required fence and cattle-guard at the place in question would naturally have operated to divert the travel from the track. As heretofore stated, "It is enough if such omission gives occasion for entry on the place of injury." *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639. Under these conditions the inference of the jury that decedent's entry on the railroad was in some manner in whole or in part occasioned by the want of the fence is warranted, and the court erred in setting aside their finding in the special verdict on this issue. It appears that the travel on the track customarily proceeded from the place of entry thereon to the place of collision with the deceased and that he took the course pedestrians usually followed in traveling thereon. This shows that the relationship between decedent and defendant had not changed from the time he entered on the railroad to the time of collision.

It is urged that the deceased violated the provisions of sec. 1811, Stats. 1911, and hence the plaintiff could not be permitted to recover for his death. This court, speaking on this subject in *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189, recently declared:

"The requirement to fence would serve very little purpose in so far as it pertained to persons if it were held that the plaintiff in this case could not recover because of the legislative inhibition against walking on railway tracks."

We are of the opinion that the legislature did not intend to defeat the right of recovery by an injured person conferred by sec. 1810, Stats. 1911, by subjecting him to the penalties of sec. 1811. The right to collect damages in cases within sec. 1810 is independent of the penal provision of sec. 1811.

It is considered that the court erred in changing the jury's answer to the first question in the special verdict and that the plaintiff is entitled to have the jury's answer thereto restored, and upon the verdict as rendered the plaintiff is entitled to judgment against the defendant for the amount of the damages assessed therein.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded for further proceedings and for judgment as indicated in this opinion.