Christopher DEAN, Gerald Tyrone Dean and
Gwendolyn Dean, Plaintiffs-Appellants,

v.

Christopher EHRHART, and Michael A. Glynn,
Defendants,

The CHICAGO & NORTHWESTERN
TRANSPORTATION CO., Defendant-
Respondent.

Court of Appeals

*No. 88–0742. Submitted on briefs July 12, 1988.—Decided
October 20, 1988.*

(Also reported in 432 N.W.2d 658.)

For the plaintiffs-appellants the cause was submitted on the briefs of *William Smoler* and *Smoler & Albert, S.C.,* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Steven W. Celba* and *Paul R. Riegel* and *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.  Christopher Dean, a young boy who was seriously injured when he was struck by a motorcycle while playing on land owned by the Chicago & Northwestern Transportation Company (CNW), sued CNW for his injuries. The trial court dismissed the action on grounds that the complaint failed to state a claim upon which relief could be granted. The issues are whether the facts alleged in Dean's complaint may be read to state a claim against CNW based on: (1) sec. 192.33, Stats., a statute requiring railroads to fence their tracks and imposing liability for damage to persons or animals caused by the lack of such fences under certain circumstances; or (2) the common law doctrine of attractive nuisance.

We decide both questions against Dean and affirm the judgment.

Dean's complaint alleged the following facts. He was playing on a grassy area adjoining the tracks on land within CNW's right-of-way when he was struck by a motorcycle being driven by Christopher Ehrhart on a dirt path running through the area. Dean claimed that his resulting injuries were caused by Ehrhart's negligent operation of the motorcycle. He also alleged that the railroad had not erected fences in the area as required by sec. 192.33, Stats., and that the absence of such fencing was also a cause of his injuries. Finally, he asserted that CNW knew or should have known that its right-of-way was being used "as a playground and a dirt bike riding area," and also that the tracks and right-of-way "were an attractive nuisance to children in the area."

Whether a complaint states a claim for which relief may be granted is a question of law. *Williams v. Security Savings & Loan Ass'n,* 120 Wis. 2d 480, 482, 355 N.W.2d 370, 372 (Ct. App. 1984). We decide such questions *de novo,* without deference to the trial court's decision. *Revenue Dept. v. Milwaukee Brewers,* 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983). And we do so under the well-established rule that a complaint will be dismissed as legally insufficient "only if it is quite clear that under no conditions can the plaintiff recover." *Williams,* 120 Wis. 2d at 482–83, 355 N.W.2d at 372 (footnote omitted). Our concern is not whether Dean can actually prove his allegations, but whether the facts he has alleged in his complaint, if proven, state a claim. *Id.* at 483, 355 N.W.2d at 372. We are satisfied that, even accepting the allegations of Dean's complaint as true and

proved, the law does not entitle him to any relief against CNW on either of the two theories of his action.

## I. STATUTORY LIABILITY

The statute involved, sec. 192.33, Stats., was enacted in 1872, and bears quoting at some length:

> (1) Every ... railroad shall erect and maintain on both sides of its road (depot grounds excepted) sufficient fences ... and suitable and convenient farm crossings for the use of the occupants of the lands adjoining and shall maintain cattle guards at all highway crossings (outside of municipalities) ....
>
> (2) ... [E]very railroad ... *shall be liable for all damages done to domestic animals, or persons thereon,* occasioned in any manner ... by the want of such fences or cattle guards; ...
>
> ....
>
> (4) No fence shall be required in places where ponds ... watercourses, ditches, hills ... or other sufficient protection renders a fence unnecessary to prevent domestic animals from straying upon the right of way.

The trial court, relying on our statement in *Anderson v. Green Bay & Western Railroad,* 99 Wis. 2d 514, 521, 299 N.W.2d 615, 619 (Ct. App. 1980), that the statute applied only to "injuries to people and cattle ... caused by collisions between trains and cattle," dismissed the claim. Dean argues that *Anderson* is inconsistent with earlier supreme court precedent and should not be followed. We note some inconsistencies, but we disagree with the assertion that *Anderson* has no application to this case.

177

In *Anderson*, we affirmed a summary judgment dismissing an injured party's suit against a railroad based on the failure to properly fence the area as required by sec. 192.33, Stats. There, the plaintiff was injured when the train began to move while she was crawling under it. Considering the statute as a whole, we concluded that it was "directed to preventing injuries to people and cattle that could be caused by collisions between trains and cattle." And we held that because "the fencing statute is not meant to protect a person in [the plaintiff's] status, it does not provide her with a cause of action." *Anderson*, 99 Wis. 2d at 521, 299 N.W.2d at 619.

There are, as Dean suggests, a few older cases that are seemingly inconsistent with our statement in *Anderson* limiting the statute's application to train-cattle collisions. The earliest cases applying sec. 192.33, Stats., imposed liability on the railroads in situations where animals were hit by trains. *See, e.g, Atkinson v. C. & N. W. R. Co.*, 119 Wis. 176, 96 N.W. 529 (1903) (damages for death of horse struck by train); *Quackenbush, Adm'x, etc. vs. Wisconsin & Minnesota R. R. Co.*, 62 Wis. 411, 22 N.W. 519 (1885) (death of conductor thrown from train when it derailed after striking a cow); and *Curry vs. The Chicago & Northwestern Railway Co.*, 43 Wis. 665 (1878) (injuries to cow struck by train). However, several later cases, decided between 1909 and 1922, interpreted the statute somewhat more expansively, allowing recovery for death and injury to pedestrians struck by trains. *Berndl v. Director General of Railroads*, 177 Wis. 210, 188 N.W. 81 (1922); *Trojanowski v. Chicago & N. W. R. Co.*, 163 Wis. 76, 157 N.W. 536 (1916); *Ulicke v. Chicago & N. W. R. Co.*, 152 Wis. 236, 139

N.W. 189 (1913); and *Schwind v. Chicago, M. & St. P. R. Co.*, 140 Wis. 1, 121 N.W. 639 (1909).

After *Berndl*, there were no reported cases construing sec. 192.33, Stats., for nearly sixty years—until *Anderson* was decided in 1980. It is true that the limiting language in *Anderson* appears to be inconsistent with some of the earlier supreme court cases imposing liability in collisions between trains and animals or pedestrians. But we do not believe any such inconsistency alters the result we reach here. None of those cases—however broadly they may have interpreted sec. 192.33, Stats.—found liability where no train was involved and the plaintiff's injuries were caused by the negligent acts of another party trespassing on railroad property. And that is the case here. Dean was injured when he was struck by an allegedly negligently-driven motorcycle, and the only connection between that event and CNW's railroad operations (and its fences—or lack of them) is that Dean was playing on railroad property at the time.

We agree with the *Anderson* court that in order to take advantage of the liability provisions of the statute, a plaintiff must be a member of the class protected by its terms. And we see no reason to depart from *Anderson*'s conclusion that the fencing requirements of sec. 192.33, Stats., are designed to protect persons from collisions with trains or other railroad vehicles using the tracks. Whether it applies solely to collisions with animals, or whether it is also applicable to collisions with people, there is nothing in the statutory language, or in the language of cases interpreting the statute throughout its 128–year history, that would lead us to conclude that it was ever intended to apply to circumstances such as those

179

present here—any more than it would apply to a trespassing child who, while playing on property owned by the railroad, was injured when a negligently-piloted airplane crashed nearby. The statute does not create any liability—strict or otherwise—on the part of CNW under the facts alleged in Dean's complaint.

Finally, Dean argues in his reply brief that we should also disregard *Anderson* because the plaintiff there claimed that the railroad was negligent in failing to maintain the fences required by sec. 192.33, Stats.—rather than strictly liable, as Dean claims is the case here. We fail to see the distinction. The plain language of the statute tells us, as it told the *Anderson* court, that it was not intended to apply to one in Dean's position, and he thus may not base his claim upon it, whether his theory is one of strict liability or ordinary negligence.

## II. ATTRACTIVE NUISANCE

As indicated, Dean alleged in his complaint that the railroad knew or should have known that "its right of way was being used as a playground and a dirt bike riding area," that the tracks and right of way "were an attractive nuisance to children in the area," and that CNW's "unlawful and negligent failure ... to erect a fence along the ... right of way was a proximate cause of [his] injuries." He claims that these allegations state a cause of action against CNW for maintaining an attractive nuisance. The trial court disagreed, as do we.

Wisconsin follows the rule of Restatement (Second) of Torts sec. 339 (1965), in applying what has long been known as the doctrine of attractive nuisance.

*Christians v. Homestake Enterprises, Ltd.*, 101 Wis. 2d 25, 45–46, 303 N.W.2d 608, 617–18 (1981). Under that rule:

> A possessor of land is subject to liability for physical harm to children trespassing thereon *caused by an artificial condition upon the land* if
>
> (a)   the *place where the condition exists* is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b)   *the condition* is one of which the possessor knows or has reason to know and which he [or she] realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> (c)   the children because of their youth do not discover *the condition* or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
>
> (d)   the utility to the possessor of maintaining *the condition* and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> (e)   the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children. (Emphasis added.)

The rule plainly contemplates the existence of an "artificial condition" upon the land. Not only does the title of the Restatement rule itself ("Artificial Conditions Highly Dangerous to Trespassing Children") so indicate, but the *Christians* court also emphasized that "[t]he Wisconsin formulation of the 'attractive nuisance cause of action' renders the possessor liable if the possessor 'maintained, or allowed to exist' upon the land *the artificial condition*." *Id.*, 101 Wis. 2d at 46, 303 N.W.2d at 618 (emphasis added).

There is no allegation in Dean's complaint that the railroad maintained any "artificial condition" in the area in which he was injured. It speaks only of CNW's knowledge that children played on the property, which included a path adjoining the tracks which was used by off-road motorcyclists, and it alleges that Ehrhart was riding on that path when he struck Dean. Indeed, such pathways have been held *not* to constitute artificial conditions within the meaning of the rule. *Brophy v. Milwaukee E. R. & T. Co.,* 251 Wis. 558, 563, 30 N.W.2d 76, 79 (1947). Nor is there any allegation, or any facts alleged which could form the basis for a reasonable inference, that the right of way was either inherently dangerous to children or "involved an unreasonable risk of serious bodily injury or death to them . . . ." *Christians,* 101 Wis. 2d at 44, 303 N.W.2d at 617 (citations omitted).

Citing a legal encyclopedia (62 Am. Jur. 2d, *Premises Liability* sec. 168 (1972)), and a tort law text (2 Harper & James, *The Law of Torts* sec. 27.5 (1956)), Dean suggests that the "artificial condition" requirement of the rule "is in disfavor among the commentators." We do not read the texts so expansively. More to the point, however, we do not see them as affecting the attractive nuisance rule in Wisconsin—a rule that has been discussed by the supreme court "in numerous cases" as including the requirement of an artificial condition existing on land. *Christians,* 101 Wis. 2d at 44, 303 N.W.2d at 617. We are satisfied that the trial court, following established precedent, correctly dismissed Dean's complaint.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*concurring*). I concur in the result but I disagree that *Anderson v. Green Bay & Western Railroad,* 99 Wis. 2d 514, 299 N.W.2d 615 (Ct. App. 1980), is of any precedential value in deciding this case. The court of appeals statement in *Anderson* that the statute applies only to "injuries to people and cattle ... caused by collisions between trains and cattle," *Id.* at 521, 299 N.W.2d at 619, is, as the majority notes, contrary to supreme court precedent.

I believe the proper answer is that the injuries to Dean were not "occasioned in any manner, in whole or in part, by the want of ... [a] fence[ ] ...." Sec. 192.33(2), Stats.

The ordinary rules relative to proximate cause are not applicable to sec. 192.33, Stats. *Alexander v. Minneapolis, St. P. & S.S.M.R. Co.,* 156 Wis. 477, 481, 146 N.W. 510, 511 (1914), appeal dismissed, 239 U.S. 635 (1916). "Under this statute, if the want of a fence contributes in any manner to cause the injury the defendant is liable." *Id.* The mere fact, however, that the right of way is unfenced is not enough to subject the railroad to liability unless an injury to a person results from a collision with a vehicle operated on the tracks by the railroad. In *Vaillant v. Chicago & N.W.R. Co.,* 163 Wis. 548, 158 N.W. 311 (1916), the court held that the lack of a fence had no causal relation to the death of a child who boarded a railroad car in Green Bay and was killed when he attempted to jump off in DePere. Likewise, in *Wendorf v. Director General of Railroads,* 173 Wis. 53, 180 N.W. 128 (1920), the railroad was absolved of liability when the plaintiff entered upon the railroad right of way and diverted from his travel on a footpath adjoining the right of way to engage in play on the railroad cars. The plaintiff argued that the railroad was liable for

not having built a cattle guard which, presumably, would have deterred the plaintiff from mounting the railroad cars.

The distinction which the cases appear to make is that the absence of a fence may occasion an injury, in whole or in part, if the injured person is struck by a train operating on the tracks but not if the injured person attempts to use the railroad cars for some frolic of his own. The injured person's act of trespass on the railroad cars is regarded as an intervening event which relieves the railroad from liability under the statute. I believe this is a valid distinction and one which we should recognize in qualifying the precedential value of *Anderson.*